**Entered on Docket
March 23, 2018**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

SAN JOSE DIVISION

7

8    IN RE:

9    SAN JOSE AIRPORT HOTEL, LLC, dba
     HOLIDAY INN SAN JOSE, et al.,

10

11                              Debtors.

12   ―――――――――――――――――――――――

13   MOHAMED POONJA, Chapter 7 Trustee,

14            Plaintiff-Appellee,

15        v.

16   CHANDRAKANT SHAH,

17            Defendant-Appellant.

Case No.  5:17-cv-00858-EJD

(Appeal from Poonja v. Sevak & Sons, L.P.
et al. (In re San Jose Airport Hotel, LLC),
Bankr. N.D. Cal. (San Jose) Case No. 09-
51045, Adv. No. 11-5236)

**ORDER AFFIRMING JUDGMENT OF
BANKRUPTCY COURT**

18

19        On remand, the United States Bankruptcy Court for the Northern District of California

20   found that Appellant Chandrakant Shah's ("Shah" or "Appellant") breach of contract proximately

21   caused damage to Appellee Mohamed Poonja ("Poonja" or "Appellee"), the Chapter 7 trustee for

22   Debtor San Jose Airport Hotel, LLC ("Debtor"), and awarded damages in the amount of

23   $11,648,758.  Shah now appeals the judgment to this Court, which has jurisdiction under 28

24   U.S.C. § 158.  For the reasons discussed below, the Court AFFIRMS the judgment of the

25   bankruptcy court.

26   **I.    BACKGROUND**

27        The factual and procedural background of this case are set forth in detail in the bankruptcy

28   Case No.: 5:17-cv-00858-EJD
     ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
                                    1

United States District Court
Northern District of California

1   court's order following trial, Dkt. No. 14-3 ("Trial Order"), this Court's order on appeal, Dkt. No.

2   14-12 ("Appeal Order"), and the bankruptcy court's order on remand, Dkt. No. 14-13 ("Remand

3   Order"). The Court briefly reviews facts relevant to the issues here below:

4    Debtor purchased the San Jose Airport Hotel ("Hotel") in 1998 for $13 million, financed

5   by a loan from the General Electric Capital Corporation ("GECC"). However, the Hotel suffered

6   financial problems and Debtor ultimately filed for bankruptcy on February 18, 2009.

7    Debtor arranged to sell the Hotel to Shah, and, on September 4, 2009, the parties executed

8   a Purchase and Sale Agreement ("PSA"). The PSA provided that Sevak & Sons, L.P. ("Sevak"),

9   an entity owned by Shah and his wife, would purchase the Hotel for $46.2 million, consisting of

10   $750,000 in cash and a secured promissory note for $45.45 million. In addition, Sevak promised

11   in the PSA that:

12   > Buyer [Sevak] shall actively and fully assist Seller [Debtor] in
   > obtaining Bankruptcy Court approval, as required by Seller,
13   > including without limitation by providing complete financial,
   > experiential and strategic information and testimony that will
14   > support adequate assurance of future performance under the Holiday
   > Inn Agreement, the qualifications of Buyer [Sevak] and [Shah] as
15   > operator and owner of the Holiday Inn Property and as a franchisee
   > from IHG (by assignment), and the adequacy of protection of the
16   > interests of GECC.

17   Dkt. No. 14-4, at 61-74 ("PSA"), at § 6.2.4. The sale was conditioned on the approval of the

18   bankruptcy court and contained an integration clause. *Id*. §§ 4.2.5, 9, 10.

19    The parties twice amended the PSA, ultimately adjusting the purchase price to $2 million

20   in cash and a secured promissory note for $44.2 million. As part of the amendments, Shah

21   executed a declaration representing that he had a personal net worth of approximately $24 million.

22    Debtor moved to approve the sale on October 14, 2009. GECC objected. At the initial

23   hearing on November 16, 2009, the bankruptcy court indicated that it would need evidence of

24   Shah's claimed financial ability. Debtor asked Shah to obtain appraisals of his own property

25   holdings, but Shah refused. Shah also disavowed his previous declaration. At trial, Shah

26   explained that providing updated appraisals would be pointless, as the value of his properties had

27   declined significantly and he was no longer worth $24 million.

28   Case No.: 5:17-cv-00858-EJD
   ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT

2

1    Ultimately, Debtor withdrew his motion to approve the sale and GECC foreclosed on the

2    hotel. The Debtor's estate received nothing from the proceeds.

3    Poonja initiated the instant action against Sevak, Shah, and his wife on August 11, 2011.

4    In his amended complaint, Poonja alleged five causes of action: (1) breach of contract against

5    Sevak; (2) breach of limited guaranty against Shah; (3) intentional interference with contractual

6    relationship against Shah; (4) fraud against Shah; and (5) negligent misrepresentation against

7    Shah. Dkt. No. 14-4, at 45-60 ("FAC"), at ¶¶ 41-77.

8    The bankruptcy court held trial on May 6 and 7, 2013. On August 2, 2013, it issued its

9    Trial Order finding that Shah had breached, among other things, the PSA's guarantee in § 6.2.4

10   that he would "actively and fully assist" Debtor and awarded $11,648,758 in damages. Trial

11   Order 15.

12   Shah appealed to this Court. On appeal, the Court affirmed the bankruptcy court's

13   decision as to liability for breach of contract, but reversed its award of damages because "Appellee

14   [Poonja] did not establish with reasonable certainty that Appellant's [Shah's] breach caused the

15   claimed damages." Appeal Order 10. The Court then remanded to the bankruptcy court to make

16   factual determinations regarding "the causal nexus between the breach and the harm, and,

17   relatedly, the amount of damages." *Id*. at 10.

18   On remand, the bankruptcy court determined that the existing record was sufficient to

19   make these factual findings and determined that "GECC's foreclosure of Plaintiff's Hotel would

20   be the natural and foreseeable result of Defendant's refusal to 'actively and fully assist Plaintiff in

21   obtaining Bankruptcy Court Approval.'" Remand Order 6. It also found that "Defendant's failure

22   to fulfill his contractual obligation to 'actively and fully assist Plaintiff in obtaining Bankruptcy

23   Court Approval' was undoubtedly a substantial factor in causing the failure to obtain approval of

24   the sale motion and the subsequent foreclosure of the Hotel by GECC." *Id*. at 7-8. It then

25   concluded that Poonja's claimed damages of $11,648,758 were reasonably certain and supported

26   by evidence. *Id*. at 8.

27

28   Case No.: 5:17-cv-00858-EJD
     ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
     3

## II.   LEGAL STANDARDS

### A.   Standard of Review

A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order or degree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Id*. This Court therefore reviews the bankruptcy court's findings of fact for clear error, and it reviews the bankruptcy court's conclusions of law *de novo*. *See In re Mortg. Store, Inc.*, 773 F.3d 990, 994 (9th Cir. 2014) (citing *In re Lazar*, 83 F.3d 306, 308 (9th Cir. 1996)). "The question of what standard of review applies to contract matters is not always so clearcut because '[t]he interpretation of a contract and the determination as to its breach are a mixed question of fact and law.'" *L.K. Comstock & Co., Inc. v. United Eng'rs & Constructors Inc.*, 880 F.2d 219, 221 (9th Cir. 1989) (quoting *Libby, McNeill, & Libby v. City Nat'l Bank*, 592 F.2d 504, 512 (9th Cir. 1978)). "Thus, if the contract interpretation includes a review of factual extrinsic evidence, the findings of fact themselves are reviewed under the 'clearly erroneous' standard, but the principles of contract law applied to those facts are reviewed *de novo*." *Id*. (citations omitted).

In reviewing an order or judgment of the bankruptcy court, the Court has the "power to consider any issue presented by the record even if the issue was not presented to the bankruptcy court." *In re Pizza of Haw., Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985). However, "[i]f the bankruptcy court's factual findings are silent or ambiguous as to a material factual question, the district court must remand the case to the bankruptcy court for the necessary factual determination; the district court may not make its own independent factual findings." *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) (citing *Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir. 1987)).

### B.   Contract Law

In California, the measure of damages for a breach of contract "is the amount which will

Case No.: 5:17-cv-00858-EJD
ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
4

United States District Court
Northern District of California

compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the

ordinary course of things, would be likely to result therefrom." Cal. Civ. Code § 3300.  As the

Supreme Court of California has explained, this provision contemplates both general damages

("detriment . . . which, in the ordinary course of things, would be likely to result") and special

damages ("detriment proximately caused thereby").  *Lewis Jorge Const. Mgmt., Inc. v. Pomona*

*Unified Sch. Dist*., 34 Cal. 4th 960, 968, 102 P.3d 257, 261 (2004).  "[G]eneral damages are a

natural and necessary consequence of a contract breach." *Id*.  On the other hand, "[s]pecial

damages are secondary or derivative losses arising from circumstances that are particular to the

contract or to the parties*." Id*.  "Special damages . . . are limited to losses that were either actually

foreseen . . . or were 'reasonably foreseeable' when the contract was formed." *Id*.  One California

court has explained the theory behind this as follows:

> The theory behind allowing for damages in contract law is that the
> injured party should receive as nearly as possible the equivalent of
> the benefits of the contract as he or she would have received, had the
> performance been rendered as promised. (*Brandon & Tibbs v.
> George Kevorkian Accountancy Corp*. (1990) 226 Cal. App. 3d 442,
> 455, 277 Cal. Rptr. 40.)  This means that recoverable damages are
> those that could fairly and reasonably be seen as arising naturally
> from a breach. (*Id*., at p. 456, 277 Cal. Rptr. 40.)  This includes
> those that should have been reasonably contemplated or foreseen in
> light of all of the known facts or facts that the breaching party
> should have known, at the time of contracting. (*Ibid*.; *Ely v. Bottini*
> (1960) 179 Cal. App. 2d 287, 294, 3 Cal. Rptr. 756.)  Thus, if the
> occurrence of these damages is sufficiently predictable to the parties
> when contracting, it can be assumed that the parties contemplated
> them. (*Lewis Jorge Construction Management, Inc. v. Pomona
> Unified School Dist*. (2004) 34 Cal. 4th 960, 968, 22 Cal. Rptr. 3d
> 340, 102 P.3d 257.)

*Archdale v. Am. Int'l Specialty Lines Ins. Co*., 154 Cal. App. 4th 449, 469, 64 Cal. Rptr. 3d 632,

649 (2007).

In addition, "Civil Code section 3300 generally requires proof of causation." *Troyk v.

Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352, 90 Cal. Rptr. 3d 589, 628 (2009); *see* Cal. Civ.

Code § 3300 ("detriment *proximately caused thereby*, or . . . would be likely to *result therefrom*")

(emphasis added).  "The test for causation in a breach of contract . . . action is whether the breach

was a substantial factor in causing the damages." *US Ecology, Inc. v. State*, 129 Cal. App. 4th

887, 909, 28 Cal. Rptr. 3d 894, 910 (2005); 1 Witkin, Summary 11th Contracts § 895 (2017).  In other words, "[i]n order to establish liability the plaintiff must show that the defendant's breach was 'a substantial factor' in causing the injury."  *Bruckman v. Parliament Escrow Corp.*, 190 Cal. App. 3d 1051, 1063, 235 Cal. Rptr. 813, 820 (Ct. App. 1987) (quoting 999 of 5 Corbin on Contracts (1964)).  "The term 'substantial factor' has no precise definition, but 'it seems to be something which is more than a slight, trivial, negligible, or theoretical factor in producing a particular result.'"  *Id.* (quoting *Espinosa v. Little Co. of Mary Hospital*, 31 Cal. App. 4th 1304, 1314, 37 Cal. Rptr. 2d 541 (1995)).

After determining, from a substantive perspective, what damages are owed under § 3300, California Civil Code § 3301 requires that the amount of damages be proven to a reasonable certainty.  Specifically, "[n]o damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin."  Cal. Civ. Code § 3301.  Instead, "[i]t has long been settled in California that 'the proof must establish with reasonable certainty and probability that damages will result in the future to the person wronged.'"  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.3d 958, 961 (9th Cir. 2001) (quoting *Caminetti v. Manierre*, 23 Cal. 2d 94, 101 (1943)); *see also* 1 Witkin, Summary 11th Contracts § 904 (2017) ("Subject to this limitation [§ 3301], the injured party may recover for the profits or benefits that he or she would have obtained by performance if the injured party can establish them with reasonable certainty.").

## III.   DISCUSSION

On appeal, Shah raises three challenges to the Remand Order: (1) it applied the wrong legal standard for causation; (2) its damages award is not supported by the record; and (3) its damages award runs counter to principles of fairness and equity.  Dkt. No. 11 ("Appellant Opening Br.").  None of these are persuasive.

### A.   The Bankruptcy Court Did Not Apply the Wrong Legal Standard

Shah first argues that the bankruptcy court applied the wrong legal standard for causation.  According to Shah, this Court's Appeal Order established that the "law of the case" was that causation should be determined under a "reasonable certainty and probability" standard, which

Case No.: 5:17-cv-00858-EJD
ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
6

United States District Court
Northern District of California

required Poonja to demonstrate with "reasonable certainty and probability" that the sale would have occurred but for Shah's breach.  Appellant Opening Br. 21.  Shah argues that the bankruptcy court failed to follow this and instead applied (1) a "foreseeability" standard, which asked whether GECC's foreclosure was the "natural and foreseeable result" of Shah's breach, and (2) a "substantial factor" test, which asked whether Shah's breach was a "substantial factor" in GECC's foreclosure.  *Id*. at 23.

Shah misunderstands both the Appeal Order and applicable California law.  As this Court stated in its Appeal Order, under Cal. Civ. Code § 3300, the measure of damages "is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."[1]  As explained in Section II above, this limits damages to those that are the "natural and necessary consequence" of the breach and "reasonably foreseeable" derivative losses.  *Lewis Jorge Const. Mgmt*, 34 Cal. 4th at 968; *see also Archdale*, 154 Cal. App. 4th at 469 ("recoverable damages are those that could fairly and reasonably be seen as arising naturally from a breach. . . . includ[ing] those that should have been reasonably contemplated or foreseen . . . .").  In addition, in order to satisfy the causation requirement of § 3300, the breach must be a "substantial factor" in causing the damages.  *US Ecology*, 129 Cal. App. 4th at 909.  These are precisely the standards the bankruptcy court applied.

In arguing for a "reasonable certainty and probability" standard, Shah confuses the substantive "measure of damages" under § 3300 with the sufficiency of proof of damages under § 3301.  While it is true that, under § 3301, Poonja was required to prove the amount of requested

---

[1] Because the Court identified § 3300 as the applicable standard, it cannot be said—as Shah argues, Appellant Opening Br. 23-24—that the Appeal Order established a "reasonable certainty and probability" standard as the "law of the case."  Moreover, in any event, a "law of the case" theory is inapplicable here because the Appeal Order did not decide the issue of causation, but instead remanded it to the bankruptcy court to decide in the first instance.  *See United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997) ("Under the 'law of the case' doctrine, 'a court is generally precluded from reconsidering an issue that has *already been decided* by the same court, or a higher court in the identical case.'") (quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)) (emphasis added).

Case No.: 5:17-cv-00858-EJD
ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT

1   damages with "reasonable certainty," Poonja was also first required to prove that, from a

2   substantive perspective, the Hotel's foreclosure was "proximately caused. . . or . . . would be likely

3   to result" from Shah's breach under § 3300. *Compare* Cal. Civ. Code § 3301 *and Caminetti*, 23

4   Cal. 2d at 101, *with* Cal. Civ. Code § 3300. This § 3300 inquiry in turn triggered an assessment of

5   whether the foreclosure was a "natural and necessary" or "reasonably foreseeable" consequence of

6   the breach, as well as whether the breach was a "substantial factor" in bringing about the

7   foreclosure. *See Lewis Jorge Const. Mgmt*, 34 Cal. 4th at 968 (§ 3300 covers "natural and

8   necessary consequences" and "reasonably foreseeable" derivative losses); *US Ecology*, 129 Cal.

9   App. 4th at 909 ("substantial factor" is the test of causation in a breach of contract action).

10  Because this Court remanded the case to the bankruptcy court to determine the "causal nexus

11  between the breach and the harm," the bankruptcy court was correct to begin its analysis with §

12  3300 and engage in "foreseeability" and "substantial factor" inquiries.[2]

13         **B.     The Damages Award is Supported by the Record**

14         Next, Shah argues that the bankruptcy court's factual determination that his breach caused

15  $11,648,758 in damages is not supported by the record. Appellant Opening Br. 24-33. According

16  to Shah, in order to prove that his breach (i.e., not providing updated appraisals as part of his duty

17  to "actively and fully assist" Debtor under § 6.2.4 of the PSA) caused the alleged damages, Poonja

18  had to prove that, had Shah provided updated appraisals, Judge Efremsky would have approved

19  the Hotel's sale. *Id*. Shah argues that the "undisputed record" establishes that this would not have

20  been the case because (1) GECC would not have agreed to the terms of the PSA; and (2) Judge

21  Efremsky would not have approved the sale unless Shah's collateral had a present value of $20

22  million and it was clear this was not the case. *Id*.

23         Shah's arguments are not persuasive. As an initial matter, they assume the wrong legal

24  standard. As Shah would have it, Poonja would have to prove that Shah's breach was the only

25

26  _____

27  [2] It is also worth noting that the bankruptcy court, after addressing causation, applied § 3301 and
    assessed whether Poonja had proven damages by a reasonable certainty. Remand Order 11. Thus,
    Shah also cannot complain that it did not engage in this assessment as well.

28  Case No.: 5:17-cv-00858-EJD
    ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
    8

United States District Court
Northern District of California

1   cause of damages.  This directly contradicts the law on causation, which only requires that breach

2   be a "substantial factor" of the claimed damages.  *US Ecology*, 129 Cal. App. 4th at 909 ("The test

3   for causation in a breach of contract . . . action is whether the breach was a substantial factor in

4   causing the damages.").

5          Under the correct standard, Poonja was required to prove that (1) foreclosure (and the

6   resulting $11,648,758 in damage) should have been reasonably foreseen as the natural result of

7   Shah's breach; and (2) Shah's breach was a substantial factor in the foreclosure.  The bankruptcy

8   court addressed both of these issues (which are purely factual questions) on remand and concluded

9   in the affirmative for each.  Thus, the only question on appeal is whether the bankruptcy court

10  clearly erred in making these factual determinations.  Assessing each in turn, the Court finds that it

11  did not.

12         Turning first to foreseeability, the bankruptcy court found:

13              The record shows that the parties knew that Defendant's cooperation
                was essential to obtaining Court approval of the sale, and this fact is
14              demonstrated by Defendant's personal guarantee to assist Plaintiff
                by providing complete financial, experiential, and strategic
15              information. See Limited Guarantee. Because the PSA is clear that
                the Hotel was fully encumbered by a deed of trust in favor of GECC
16              that was fully due and owing, the parties understood that a failure of
                the sale would result in GECC's foreclosure of the Hotel. See PSA
17              at B. Given Plaintiff's bankruptcy and GECC's aggressive position,
                the parties knew or should have known that foreclosure would be the
18              natural and foreseeable consequence of a Defendant's failure to
                cooperate in obtaining Court approval.
19
    Remand Order 5-6.  Shah identifies nothing clearly erroneous about these findings, and the Court
20
    discerns none.  On the contrary, the record abounds with evidence that the parties foresaw, at the
21
    time the operative contracts were signed, that the failure of Shah to "actively and fully assist Seller
22
    in Obtaining Bankruptcy Court Approval" would result in the foreclosure of the Hotel.  For
23
    example, Shah was told "many times" that he would have to show proof of his net worth to the
24
    bankruptcy court if GECC objected to the sale of the Hotel.  Dkt. No. 14-7, at 59:2-10.  Shah
25
    appeared to agree with this, as he promised in the PSA to "actively and fully assist Seller in
26
    obtaining Bankruptcy Court Approval . . . including . . . by providing complete financial . . .
27

28  Case No.: 5:17-cv-00858-EJD
    ORDER AFFIRMING JUDGMENT OF BANKRUPTCY COURT
                                              9

United States District Court
Northern District of California

testimony." PSA § 6.2.4. Shah also initially supplied a declaration claiming "approximately $24 million" in personal wealth to support Debtor's motion to approve the sale of the hotel. Dkt. No. 14-9, at 145-46. Given all this, it seems Shah was well aware that his "active[] and full[] assistance"—including providing updated appraisals—was critical to obtaining the bankruptcy court's approval of the sale. Accordingly, the record supports the bankruptcy court's conclusion that foreclosure was a foreseeable result of Shah's breach and the bankruptcy court did not clearly err in making this finding.

Turning second to substantial factor, the bankruptcy court found:

> It is unknown how the Court would have ruled on the withdrawn motion to approve the sale, and Defendant's speculative assertion that the Court would have denied approval of the sale asks the Court to substitute Defendant's judgment for its own. Defendant's argument that the Court might not have approved the sale is irrelevant because, by refusing to honor his contractual obligations, Defendant ensured that the sale would not be approved and that GECC would foreclose on the Hotel. Therefore, the Court finds that Defendant's failure to fulfill his contractual obligation to "actively and fully assist [Plaintiff] in obtaining Bankruptcy Court Approval" was undoubtedly a substantial factor in causing the failure to obtain approval of the sale motion and the subsequent foreclosure of the Hotel by GECC.

Remand Order 7-8. Shah also identifies nothing clearly erroneous about these findings, and here again the Court detects none. Instead, here too the record amply supports them. For example, the bankruptcy court made it clear that it would need assurance of Shah's financial wherewithal before approving the sale. *See, e.g.*, Dkt. No. 14-10, at 36 (Judge Efremsky stating at the December 16, 2009 hearing that "[t]he other potential problem is with regards to the buyer's guaranty of $20 million, there needs to be a showing that the buyer is good for that, and today."); *see also* Dkt. No. 14-9, at 122-28 (Limited Guarantee attached to the PSA in which Shah personally guaranteed "the payment and prompt performance of every covenant, warranty, representation, provision, obligation, term and condition made or to be kept or performed by [Sevak]"). After he refused to "actively and fully assist" in this process in breach of the PSA, Debtor felt "left with no alternative" but to terminate the sale. Dkt. No. 14-10, at 276. This refusal was "more than a slight, trivial, negligible, or theoretical factor" in prompting Debtor to terminate the sale, which in

Case: 11-05236   Doc# 143   Filed: 03/22/18   Entered: 03/23/18 15:19:38   Page 10 of 11

1    turn enabled foreclosure of the Hotel.  *Espinosa*, 31 Cal. App. 4th at 1314.  Accordingly, the

2    record supports the bankruptcy court's conclusion that Shah's breach was a substantial factor in

3    causing the Hotel's foreclosure and the bankruptcy court did not clearly err in making this finding.

4         In sum, as assessed under the correct legal standard, the damages award is supported by the

5    record and the bankruptcy court's factual findings are not clearly erroneous.  As such, the

6    bankruptcy court did not err in finding that Shah's breach caused $11,648,758 in damages.

7         **C.    Fairness and Equity Do Not Weigh Against the Damages Award**

8         Shah also argues that fairness and equity weigh against the damages award.  Appellant

9    Opening Br. 33.  This, in and of itself, is not a sufficient basis for reversing the bankruptcy court

10   in this case, particularly in light of the fact that the bankruptcy court applied the correct legal

11   standard and its factual findings are not clearly erroneous.  Thus, the Court finds this argument

12   unpersuasive as well.

13   **IV.   ORDER**

14        The order of the bankruptcy court is AFFIRMED.  The Clerk shall close this file.

15        **IT IS SO ORDERED.**

16   Dated: March 22, 2018

17        EDWARD J. DAVILA

18        United States District Judge

United States District Court
Northern District of California