RIORDAN & HORGAN
Dennis P. Riordan (State Bar No. 69320)
dennis@riordan-horgan.com
Donald M. Horgan (State Bar No. 121547)
don@riordan-horgan.com
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

BOERSCH SHAPIRO
Matthew C. Dirkes (SBN 255215)
1611 Telegraph Ave., Suite 806
Oakland, CA 94612
Telephone: (415) 225-5412
Email: mdirkes@boerschshapiro.com

Attorneys for Defendant-Appellant
CHANDRAKANT SHAH

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br>SAN JOSE AIRPORT HOTEL, LLC, dba HOLIDAY INN SAN JOSE, MOBEDSHAHI HOTEL GROUP,<br><br>Debtors. | A.P. Case No. 11-05236 SLJ<br><br>(Case No. 09-51045 SLJ Ch. 7<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO STAY JUDGMENT ENFORCEMENT PROCEEDINGS AND WAIVE SUPERSEDEAS BOND PENDING APPEAL** |
| MOHAMED POONJA, Chapter 7 Trustee for SAN JOSE AIRPORT HOTEL, LLC, dba HOLIDAY INN SAN JOSE, Debtor,<br><br>Plaintiff-Appellee,<br><br>v.<br><br>CHANDRAKANT SHAH,<br><br>Defendant-Appellant. | **Date:** August 21, 2018<br>**Time:** 1:30 p.m.<br>**Courtroom:** Hon. Stephen L. Johnson |

MEMORANDUM IN SUPPORT OF
MOTION TO STAY JUDGMENT
ENFORCEMENT PROCEEDINGS AND
WAIVE SUPERSEDEAS BOND
PENDING APPEAL

Case: 11-05236   Doc# 158   Filed: 07/18/18   Entered: 07/18/18 10:35:48   Page 1 of 11
A.P. Case No. 11-05236 SLJ

# INTRODUCTION

Defendant-Appellant Chandrakant Shah hereby moves the Court to stay the judgment enforcement proceedings that plaintiff-appellee Mohamed Poonja ("the trustee") has initiated against him. Mr. Shah has appealed the almost $12 million judgment arising out of the above-captioned case to the Ninth Circuit Court of Appeals. The trustee is seeking to enforce that judgment before that appeal can be decided.

On July 2, 2018, counsel for the trustee emailed counsel for Mr. Shah stating "I have been instructed by the Trustee to execute on the judgment immediately, and to continue collection efforts unless and until there is a stay in place, whether by bond or court order." Then, three days ago, on Tuesday, July 10, 2018, the trustee filed a Writ of Execution to the United States Marshal directing it to "levy upon the property" of Mr. Shah. The trustee has taken these steps, which will lead to Mr. Shah's properties, including potentially his personal residence, being sold at foreclosure auctions, despite the trustee's acknowledgement that Mr. Shah has sufficient assets to satisfy the judgment should the Ninth Circuit affirm it on appeal.

Mr. Shah seeks a stay of the enforcement proceedings, and a waiver of the bond, because, as the trustee concedes, Mr. Shah has more than sufficient assets to satisfy the judgment. Where defendants can establish the availability of funds to pay the judgment should the judgment be affirmed on appeal, courts in this District have waived the requirement that a defendant post a supersedeas bond in order to stay enforcement proceedings, as such a bond would otherwise be "a waste of money." *Kranson v. Fed. Express Corp.*, Case No.: 11-cv-05826-YGR, 2013 U.S. Dist. LEXIS 181838, at *3 (N.D. Cal. Dec. 31, 2013). That is especially true in the present case, where the cost of the bond during the pendency of the appeal would likely exceed one million dollars. Finally, the trustee will suffer no prejudice if the enforcement proceedings are stayed and the supersedeas bond is waived, as the value of Mr. Shah's assets are more than enough to satisfy the judgment should it be affirmed.

///

# FACTUAL BACKGROUND[1]

## I. THE UNDERLYING BANKRUPTCY PROCEEDINGS AND BREACH

This case arises out of the bankruptcy proceedings of the San Jose Airport Hotel, LLC, also known as the Holiday Inn San Jose (the "Hotel"). In its order affirming this Court, the District Court summarized the background as follows:

> Debtor [Mobedshahi Hotel Group] purchased the San Jose Airport Hotel ("Hotel") in 1998 for $13 million, financed by a loan from the General Electric Capital Corporation ("GECC"). However, the Hotel suffered financial problems and Debtor ultimately filed for bankruptcy on February 18, 2009.
>
> Debtor arranged to sell the Hotel to Shah, and, on September 4, 2009, the parties executed a Purchase and Sale Agreement ("PSA"). The PSA provided that Sevak & Sons, L.P. ("Sevak"), an entity owned by Shah and his wife, would purchase the Hotel for $46.2 million, consisting of $750,000 in cash and a secured promissory note for $45.45 million. . . . The sale was conditioned on the approval of the bankruptcy court . . . .
>
> The parties twice amended the PSA, ultimately adjusting the purchase price to $2 million in cash and a secured promissory note for $44.2 million. As part of the amendments, Shah executed a declaration representing that he had a personal net worth of approximately $24 million.
>
> Debtor moved to approve the sale on October 14, 2009. GECC objected. At the initial hearing on November 16, 2009, the bankruptcy court indicated that it would need evidence of Shah's claimed financial ability. Debtor asked Shah to obtain appraisals of his own property holdings, but Shah refused. Shah also disavowed his previous declaration. At trial, Shah explained that providing updated appraisals would be pointless, as the value of his properties had declined significantly and he was no longer worth $24 million.
>
> Ultimately, Debtor withdrew his motion to approve the sale and GECC foreclosed on the hotel. The Debtor's estate received nothing from the proceeds.
>
> [The Trustee] initiated the instant action against Sevak, Shah, and his wife on August 11, 2011. In his amended complaint, Poonja alleged five causes of action: (1) breach of contract against Sevak; (2) breach of

---

[1] Mr. Shah incorporates the same factual background as that set forth in the concurrently filed Application for Temporary Restraining Order. The declarations of Dennis Riordan and Matthew Dirkes cited in the factual background were submitted in support of Mr. Shah's application for a temporary restraining order.

> limited guaranty against Shah; (3) intentional interference with contractual relationship against Shah; (4) fraud against Shah; and (5) negligent misrepresentation against Shah. Dkt. No. 14-4, at 45-60 ("FAC"), at ¶¶ 41-77.
>
> The bankruptcy court held trial on May 6 and 7, 2013. On August 2, 2013, it issued its Trial Order finding that Shah had breached, among other things, the PSA's guarantee in § 6.2.4 that he would "actively and fully assist" Debtor and awarded $11,648,758 in damages. Trial Order 15.
>
> Shah appealed to this Court. On appeal, the Court affirmed the bankruptcy court's decision as to liability for breach of contract, but reversed its award of damages because "Appellee [Poonja] did not establish with reasonable certainty that Appellant's [Shah's] breach caused the claimed damages." Appeal Order 10. The Court then remanded to the bankruptcy court to make factual determinations regarding "the causal nexus between the breach and the harm, and, relatedly, the amount of damages." *Id.* at 10.
>
> On remand, the bankruptcy court determined that the existing record was sufficient to make these factual findings and determined that "GECC's foreclosure of Plaintiff's Hotel would be the natural and foreseeable result of Defendant's refusal to 'actively and fully assist Plaintiff in obtaining Bankruptcy Court Approval.'" Remand Order 6. It also found that "Defendant's failure to fulfill his contractual obligation to 'actively and fully assist Plaintiff in obtaining Bankruptcy Court Approval' was undoubtedly a substantial factor in causing the failure to obtain approval of the sale motion and the subsequent foreclosure of the Hotel by GECC." *Id.* at 7-8. It then concluded that Poonja's claimed damages of $11,648,758 were reasonably certain and supported by evidence. *Id.* at 8.

Case No. 17-cv-00858, EJD, N.D Cal., Dkt. 23, at 2-3. After this Court concluded on remand from the District Court that Mr. Shah was liable for almost $12 million in damages, the District Court affirmed that judgment. *Id.* at 11. Mr. Shah then filed a timely notice of appeal on April 4, 2018, Dkt. 24, and counsel for both parties then began to participate in the Ninth Circuit's mediation program.

## II. PROCEEDINGS SINCE THE NOTICE OF APPEAL WAS FILED

On April 30, 2018, roughly four weeks after Mr. Shah filed his notice of appeal, the trustee sent him a notice of subpoena, which requested documents relating to 39 categories of information, and a document captioned "Plaintiff's Ex Parte Application for an Order of Examination of Chandrakant Shah." That application was filed in this Court, in the case captioned Adv. Pro. No.

11-05236. On May 8, 2018, this Court granted the Order for Appearance and Examination of Judgment Debtor Chandrakant Shah. Declaration of Dennis P. Riordan ("Riordan Decl.)" Ex. 1 (Adv. Pro. No. 11-05236, Dkt. 149). The trustee claims to have sought the debtor examination to obtain "information to aid in enforcement of a money judgement against Shah entered in the above captioned adversary proceeding." *Id.* at 2. Two weeks later, the trustee filed a document in this Court captioned "Proof of Personal Service," which purported to show that the trustee had personally served Mr. Shah with both the subpoena and the Order for Appearance and Examination."  Adv. Pro. No. 11-05236, Dkt. 150.

While the trustee pursued its options in this Court, counsel for Mr. Shah attempted to reach an agreement with counsel for the trustee regarding the provision of adequate security for the judgment pending the Ninth Circuit Appeal. Counsel for Mr. Shah sought to reach an informal arrangement with counsel for the trustee primarily because it appeared to be in both parties' interest to avoid obtaining a supersedeas bond. Counsel for Mr. Shah spoke with a bond broker and was told that only one or two companies offer supersedeas bonds where the security for the bond is real property, as opposed to more liquid assets. Declaration of Matthew Dirkes ("Dirkes Decl.") ¶ 2. (As demonstrated below, although Mr. Shah possesses sufficient assets to satisfy the judgment should the Ninth Circuit affirm the appeal, those assets are primarily in the form of real property). Counsel for Mr. Shah was informed that a supersedeas bond would cost approximately 4% per year of the total judgment, which would equal roughly $480,000 per year during the pendency of the appeal. Dirkes Decl. ¶ 2. Additional fees would likely push the cost of obtaining a bond over a million dollars, as the appeal would likely not be resolved within one year.

In addition, a supersedeas bond is considered a cost of appeal. *See* Fed. R. App. P. 39(e) (titled "Costs on Appeal Taxable in the District Court," stating: "The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule: . . . premiums paid for a supersedeas bond or other bond to preserve rights pending appeal."); *see also Hynix Semiconductor, Inc. v. Rambus Inc*., 2012 U.S. Dist. LEXIS 3552, at *26 (N.D. Cal. Jan. 11, 2012) ("bond premiums themselves fall squarely within Rule 39 and, therefore, are recoverable."). As

such, should Mr. Shah prevail on the appeal, the trustee would be responsible for the cost of the bond.

To avoid the unnecessary risk and cost associated with a supersedeas bond, counsel for Mr. Shah offered to provide counsel for the trustee with information regarding Mr. Shah's current financial condition and his ability to satisfy the judgment should it be affirmed on appeal. Riordan Decl. Ex. 1 (May 4, 2018 email to counsel for trustee stating, in part, "I'd be happy to informally provide you with any and all information concerning Mr. Shah's current financial condition."). On May 28, counsel for Mr. Shah sent counsel for the trustee a chart that set forth the values and equities in Mr. Shah's properties. The email stated, in relevant part, the following:

> Here is the present version of the chart prepared by CK's tax and estate lawyers. We can provide documentation in support of the chart, and are working on gathering additional information on valuations. It seems clear that CK's assets are adequate to cover the judgment. Your client has put judgment liens on some properties, and could more than cover the judgment amount by adding liens on additional properties, which we would facilitate your doing. Let me know if you are interested in our working together to get that done, as well as what further information we can provide. Obviously, it is in everyone's interest to get as much as possible done outside the judicial process.

Riordan Decl. ¶ 3; Ex. 2.

On that same day, counsel for the trustee sent the trustee an email, cc'ing counsel for Mr. Shah, that stated, in relevant part, the following: "Attached is the chart I just received from Dennis Riordan [counsel for Mr. Shah]. It appears to confirm what we have assumed all along – that Shah has the net assets to satisfy the judgment. . . ." Riordan Decl. ¶ 4; Ex. 3. Indeed, in October 2013, after this Court first entered judgment against Mr. Shah, the trustee recorded abstracts of judgment against four of Mr. Shah's six properties. Decl. of Douglas Spletter ("Spletter Decl.") ¶ 3 (filed under seal).

On June 4, 2018, counsel for Mr. Shah sent counsel for the trustee a follow-up email, stating, in relevant part, the following:

> I'm following up on my e-mails of last week. In addition to the chart I sent you earlier setting forth values and equities on Mr. Shah's properties, I forwarded to you two recent appraisals which indicate recent, increased values on the properties at issue. We believe that Mr.

Shah has demonstrated that he has sufficient assets to cover any judgment that the Ninth Circuit might affirm.

Riordan Decl. ¶ 5; Ex. 4. In response, counsel for the trustee sent an email dated June 6 in which he set forth four possible manners for addressing the judgment security issue. *Id.* The same day, counsel for Mr. Shah emailed back, stating that the second proposed option, in which Mr. Shah would provide the trustee with deeds of trust with priorities and equities on properties sufficient to satisfy the judgment if affirmed, would be acceptable to Mr. Shah. In that email, counsel for Mr. Shah stated the following:

> I agree that alternative two seems reasonable and in the interest of both parties, as it avoids the cost of the bond for CK now and the risk of that cost being imposed on the trustee if we prevail on appeal. As I understand it, with the deeds of trust recorded and conveyed to your client, we will maintain the status quo until the appeal is decided, with the deeds having the provision that they will be reconveyed to CK should he prevail. I will speak to CK and get his consent. I assume that you will draw up the deeds. Let me know how we will proceed with the drafting process in terms of information you need from us.

*Id.* Counsel for the trustee responded later that day, stating "Thank you for your response. We are in agreement," and proposing a path forward. *Id.*

Despite the parties' agreement on the judgement security issue, and despite the trustee's acknowledgement that Mr. Shah's assets contained sufficient value to satisfy the judgment, the trustee insisted on proceeding with the debtor examination, which took place on June 19, 2018. Dirkes Decl. ¶ 5. Counsel for Mr. Shah sent counsel for the trustee various documents relating to Mr. Shah's loan applications in the days prior to the examination, at the request of counsel for the trustee. Dirkes Decl. ¶ 3; Ex. 1.

The week after the debtor examination, and in preparation for a second conference call with the mediator from the Ninth Circuit, counsel for Mr. Shah sent counsel for the trustee the following email:

> We thought it made sense for the parties to touch base prior to our call with the Ninth Circuit mediator today. As for the possibility of settlement, our understanding is that the trustee would accept a 10% or possibly 15% percent reduction of the total judgment to resolve the case now. That number, from our perspective, would not settle the case and we think it makes sense to inform the mediator of such today and let her know that the parties will proceed to briefing the merits of the appeal. Please let us know if you disagree.

> As for the trustee's security interest in the judgment pending the appeal, we trust you'll use whatever information you gathered Tuesday to propose a specific arrangement to implement the parties' agreement that Mr. Shah will provide the trustee with deeds of trust with priorities and equities on properties sufficient to satisfy the judgment if it is affirmed. We look forward to getting the trustee's security interest satisfied so we can focus our attention on the merits briefing.

Riordan Decl. ¶ 7; Ex. 5. In response, counsel for the trustee sent the following:

> Thank you for your email.
>
> You are correct that the case could be settled now for a 10% or possibly a 15% discount in the judgment in an all cash settlement. Since this is not of interest to Mr. Shah, we are in agreement that the mediator should be so advised and the parties should proceed to briefing.
>
> The trustee came away from Mr. Shah's testimony at the OEX and a detailed review of the real properties held by Mr. Shah with the strong opinion that it is not in the best interests of the estate (nor an appropriate risk for it) to take a security interest in lieu of a supersedeas bond. That risk should be taken by a bonding company. Mr. Shah should arrange for such a bond. The trustee is willing to give Mr. Shah a reasonable time to post such a bond before executing on the judgment, if Mr. Shah is seriously making the effort. Please advise.

*Id.*

A week later, on June 29, counsel for Mr. Shah sent counsel for the trustee the following email:

> We have conferred with an agent for civil appeals bonds who came highly recommended to us. He has informed us that: (a) the firms that will extend such bonds using real estate as collateral, with whom he has a good relationship, are limited in number (2) the process will take 45 to 60 days to complete; and (3) and that the rate will be over four per cent per year, which will mean, with an appeal that will almost surely take more than a year to decide, that we are looking at bonding costs over a million dollars. Despite these obstacles, we are pushing ahead on getting the bond. The much higher than anticipated costs are a burden for our client, but also represents a much greater risk for yours, because even a remand for further proceedings will shift the bonding costs to the trustee. We hope that you will let us get through the bonding process without attempting to begin to execute on the judgment. We would, of course, move to stay execution if the trustee did choose to move forward.

Riordan Decl. ¶ 6; Ex. 6.

On July 2, counsel for Mr. Shah received the following email from counsel for the trustee in response:

> I have forwarded your email below about obtaining a supersedeas bond for the 9th Circuit Appeal in *Poonja v. Shah* to the Trustee and his outside counsel. In doing so, the Trustee and his counsel have been advised of, and considered the risk to the estate in requiring this bond, and, the fact that Mr. Shah can move to stay execution.
>
> With these in mind, however, I have been instructed by the Trustee to execute on the judgment immediately, and to continue collection efforts unless and until there is a stay in place, whether by bond or court order.

*Id.* A week later, on July 10, the trustee filed a "Writ of Execution to the United States Marshal," which directed the Marshal for the Northern District of California "to levy upon the property of the above named judgment debtor to satisfy a money judgment in according with attached instructions." Dirkes Decl. ¶ 4; Ex. 2.

Mr. Shah's tax and estate planning attorney, Douglas Spletter, has submitted a declaration, filed under seal, setting forth the values of the six properties Mr. Shah owns, including the encumbrances on those properties and the equity Mr. Shah retains in the properties.

Mr. Shah initially filed the instant motion and the accompanying application for a temporary restraining order in the District Court on July 13, 2018. On July 16, 2018, the District Court issued an order denying without prejudice the relief sought and instructing Mr. Shah to file the motion and application in this Court first. *See* Case No. 17-cv-00858, EJD, N.D Cal., Dkt. 29.

## LEGAL STANDARD

Federal Rule of Bankruptcy Procedure 8007 states that "[o]rdinarily, a party must move first in the bankruptcy court for . . . an order . . . granting an injunction while an appeal is pending . . . ." Fed. R. Bank. P. 8007(a)(1)(C). Rule 7062 states that Federal Rule of Civil Procedure 62 "applies in adversary proceedings." Fed. R. Bank. P. 7062. Federal Rule of Civil Procedure 62, in turn, provides that when a defendant appeals a judgment, the "appellant may obtain a stay [of proceedings to enforce the judgment] by supersedeas bond . . . The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond." Fed. R. Civ. P. 62(d); *see also Kranson v. Fed. Express Corp*., Case No.: 11-cv-05826, 2013 U.S. Dist. LEXIS 181838, *1 (N.D. Cal. Dec. 31, 2013) (quoting same). The purpose of a supersedeas bond is to shield an appellee from a loss that could result from

the stay. *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1505 n.1 (9th Cir. 1987); *N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

Under Rule 62, courts retain the discretion to "waive the bond requirement or allow the judgment debtor to use some alternative type of security." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 757 F.Supp. 1101, 1104 (S.D. Cal. 1990); *accord Fed. Prescription Serv. v. Am. Pharmaceutical Ass'n*, 636 F.2d 755, 759-61, 205 U.S. App. D.C. 47 (D.C.Cir.1980) (noting Rule 62 "in no way necessarily implies that filing a bond is the only way to obtain a stay"); *N. Ind. Pub. Serv. Co. v. Carbon Cnty. Coal Co.*, 799 F.2d 265, 281 (7th Cir.1986) (holding court has discretion to waive $2 million appeal bond).

In determining whether to waive the bond requirement, courts may look to the following factors:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

*Kranson*, 2013 U.S. Dist. LEXIS 181838, at *2-3 (quoting *Dillon v. City of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988). "Courts in the Ninth Circuit regularly use the *Dillon* factors in determining whether to waive the bond requirement." *Id.* at *3 (*citing Cotton ex rel. McClure v. City of Eureka*, Cal., 860 F.Supp. 2d 999, 1028 (N.D. Cal. 2012)); *see also U.S. Bank N.A. v. Wayman*, Case No. 13-cv-02203-BAS, 2016 U.S. Dist. LEXIS 69358, at *2-3 (S.D. Cal. May 25, 2016) (applying *Dillon* factors).

**ARGUMENT**

Mr. Shah satisfies the relevant *Dillon* factors. A stay is appropriate.

Most importantly, Mr. Shah satisfies the third and fourth *Dillon* factors. As established in the accompanying declaration of Doug Spletter, Mr. Shah owns six properties, including two hotels and a ranch of more than 100 acres. Spletter Decl. ¶ 3. The equity in those properties is more than enough to satisfy the judgment, should it be affirmed on appeal. *Id.* It would therefore be a "waste of money" to compel Mr. Shah to obtain a supersedeas bond in order to prevent the trustee from

foreclosing on his properties merely because he has appealed the judgment against him. *Kranson*, 2013 U.S. Dist. LEXIS 181838, at *3 (waiving supersedeas bond requirement because defendant's "ability to pay the judgment is so plain that the cost of the bond would be a waste of money."); *see also Lewis v. Cty. of San Diego*, Case No.: 13-CV-02818-H-JMA2018 U.S. Dist. LEXIS 31897, at *7 (S.D. Cal. Feb. 27, 2018) ("the Court is confident that the [defendant] has funds available to pay the judgment and that, given the [defendant's] evident ability to pay, the cost of a bond would be a waste of money."). This is especially true given that the supersedeas bond would cost approximately one million dollars and given that the trustee and his counsel have admitted that "Shah has the net assets to satisfy the judgment. . . ." Riordan Decl. ¶ 4; Ex. 3

Mr. Shah also satisfies the first and second *Dillon* factors. The collection process will not be complex. If the judgment is affirmed, Mr. Shah will sell the properties necessary to satisfy the judgment. The trustee can be assured that the properties will be available, and burdened by no additional encumbrances, because the trustee recorded judgment liens against four of the six properties in October 2013. Spletter Decl. ¶ 3. And, should there be any doubt as to Mr. Shah's inclination or ability to bring his properties to market in order to satisfy the judgment, the trustee would always be able to initiate enforcement proceedings – as he is now doing – to foreclose upon the necessary properties.

Finally, although not a *Dillon* factor, it bears mentioning that the trustee will suffer no prejudice should the Court stay the enforcement proceedings and waive the bond requirement. Such an order would merely preserve the status quo as it has existed for the last five years.

**CONCLUSION**

Mr. Shah respectfully requests that the Court grant his Motion to Stay Judgment Enforcement Proceedings and Waive Supersedeas Bond.

Dated: July 18, 2018    RIORDAN & HORGAN

                                         /s/Dennis P. Riordan
                                        Dennis P. Riordan

                                        Attorneys for Chandrakant Shah