**LAW OFFICE OF WAYNE A. SILVER**
Wayne A. Silver (108135)
643 Bair Island Road, Suite 403
Redwood City, CA 94063
Phone: (650) 282-5970
Fax:     (650) 282-5980
Email: ws@waynesilverlaw.com

Attorney for Defendants,
*CHANDRAKANT SHAH and MRUDULA C. SHAH*

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| In re:<br><br>SAN JOSE AIRPORT HOTEL, LLC dba HOLIDAY INN SAN JOSE, MOBEDSHAHI HOTEL GROUP,<br><br>          Debtors. | Case No.: 09-51045-SLJ<br>Chapter 7<br><br>(Jointly Administered with Case No. 09-51073-SLJ) |
| SAN JOSE AIRPORT HOTEL, LLC dba HOLIDAY INN SAN JOSE, MOBEDSHAHI HOTEL GROUP,<br><br>          Plaintiffs,<br><br>     vs.<br><br>SEVAK & SONS, L.P., a California limited partnership; CHANDRAKANT SHAH, an individual, and MRUDULA C. SHAH, an individual,<br><br>          Defendants. | Adv. Pro. No. 11-05236<br><br>**OPPOSITION TO PLAINTIFF'S MOTION TO AMEND JUDGMENT TO ADD ALTER-EGOS AND SPOUSE OF JUDGMENT DEBTOR**<br><br>Date:     July 21, 2020<br>Time:     1:30 p.m.<br>Court:    Courtroom 9,<br>              Hon. Stephen L. Johnson |

CHANDRAKANT SHAH ("Mr. SHAH") and MRUDULA C. SHAH ("Mrs. Shah") ("Defendants") hereby object to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Add Spouse of Debtor ("Motion").

Defendants are not in a position to offer substantial opposition to the Motion, and renew their request for a brief continuance. (See Order Denying Request to Continue Hearing, DK# 240)

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor

Case: 11-05236    Doc# 243    Filed: 07/17/20    Entered: 07/17/20 08:52:31    Page 1 of 26

Defendants' undersigned attorney was retained on July 16, 2020 to represent them in this Adversary Proceeding. (See Omnibus Declaration of Chandrakant Shah (the "Shah Decl."), ¶¶2 – 7, and the Declaration of Wayne A. Silver, filed concurrently herewith.)

## I. Add Spouse of Judgment Debtor

Mrs. Shah's motion to dismiss was granted by Order entered on January 31, 2012 (DK#32). The Order stated the motion was granted "with leave to amend on whether Mrudula C. Shah was liable as a general partner of Sevak & Sons." Plaintiff was given until February 21, 2012 to file an amended complaint ("FAC"), and did so (DK#33). The FAC did not name Mrs. Shah as a defendant. The Court is requested to take judicial notice of the January 31, 2012 Order and FAC, copies of which are attached hereto as Exhibits One and Two, respectively.

Although, community property is liable for debts incurred by either spouse during marriage, it does not follow that a wife can be added to a judgment rendered against her husband in an action in which she initially named as a party and successfully brought a motion to dismiss. (See, *Oyakawa v. Gillett*, 8 Cal.App.4th 628 (1992)) Plaintiff elected not to continue the lawsuit against Mrs. Shah, and should not be allowed to sneakily add her to the Judgment years later. Otherwise Mrs. Shah will have been denied her opportunity to litigate, raising due process concerns. *Triplett v. Farmers Ins. Exchange*, 24 Cal.App.4th 1415. 1422 (1994); *11601 Wilshire Associates v. Grebow*, 64 Cal.App.4th 453, 454-455 (1998).

## II. Plaintiff Cannot Assert a Claim for Offensive Equitable Estoppel

Plaintiff next argues that Mr. Shah treated the six properties as his personal assets in the underlying transaction. (Motion, pp.10:17 – p. 11:16) This is a disguised effort to use "offensive equitable estoppel," in effect seeking an order preventing Mr. Shah from denying personal ownership of these properties. It doesn't work.

Equitable estoppel is a defense, not a cause of action. *Weaver v. New England Mut. Life Ins. Co.*, 52 F. Supp. 2d 127, 134 (D. Me. 1999). Indeed, it is a "well settled principle that estoppel is available only for protection, and cannot be used as a weapon of assault." *Dickerson v. Colgrove*, 100 U.S. 578, 581, 25 L. Ed. 618 (1879); *Barringer v. Lilley*, 96 F.2d 607 (9th Cir. 1938) In addition,

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor

Case: 11-05236    Doc# 243    Filed: 07/17/20    Entered: 07/17/20 08:52:31    Page 2 of 26

Mr. Shah contends that Plaintiff's effort to assert an equitable estoppel argument eleven years after the alleged conduct is barred by the doctrine of laches as well as applicable statutes of limitations.

### III.      Adding Judgment Debtors Under California Code of Civil Procedure ("CCP") §187

Plaintiff is correct that CCP §187 provides the court with "the authority to amend a judgment to add additional judgment debtors." A CCP §187 amendment requires: (1) that the new party be an alter ego of the old party **and** (2) that the new party had the opportunity to litigate in the proceeding resulting in the judgment in order to satisfy due process. *Danko v. O'Reilly*, 232 Cal.App.4th 732, 735-736 (2014) Plaintiff's argument that the entities in question can be added to the Judgment merely because they are alleged alter-egos is wrong, because not only are these entities not alter-egos, but also the argument ignores the second requirement – that the new party had the opportunity to litigate in the Adversary Proceeding.

Such a procedure is an appropriate and complete method by which to bind new … defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." …' …" *Danko v. O'Reilly*, 232 Cal. App. 4th 732, 736 (2014) That question is somewhat complex, and the law unsettled. (Compare *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.*, 75 Cal.App.4th 110, 116 (1999); *Triplett v. Farmers Ins. Exchange*, 24 Cal.App.4th 1415, 1420 (1994) with *Carolina Casualty Ins. Co.*, 212 Cal.App.4th 1181, 1188–1189 (2012); *Carr v. Barnabey's Hotel Corp.*, 23 Cal.App.4th 14, 21–23 (1994); *In re Levander*, 180 F.3d 1114, 1122 (9th Cir. 1999)

With respect to the first requirement, Plaintiff's allegation the LLC's are Defendants' alter-egos, Plaintiff offers erroneous allegations of fraudulent transfers, many of which aren't even transfers. As set forth in the Shah Decl. in ¶¶8 – 9, the "transfers" Plaintiff complains of were done for tax and estate planning purposes, **where neither Mr. nor Mrs. Shah was the transferor**. Instead, these transactions were among limited partnerships and LLC's; the transfer of the real properties into these entities occurred many years earlier when they were purchased, and Mr. Shah had a good faith belief the Judgment was going to be overturned on appeal.

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor

Case: 11-05236      Doc# 243      Filed: 07/17/20      Entered: 07/17/20 08:52:31      Page 3 of 26

Virtually none of the factors to be considered in applying the alter-ego doctrine are present here, with the exception of common ownership of the LLC's. There is no evidence of commingling of funds and other assets, the holding out by one entity that it is liable for the debts of the other, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other. Nor is there evidence include inadequate capitalization, disregard of corporate formalities, or lack of segregation of corporate records. *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538-39 (2000)

Plaintiff's own evidence negates proof of that second requirement, because several of these alleged alter ego entities did not exist at the time of the litigation in the Adversary Proceeding. (Shah Decl., ¶8) Moreover, these alleged alter ego entities are separate LLC's operating businesses and managing real properties. (Shah Decl., ¶10) And while it is not necessary that the alter ego doctrine be either alleged or proven in the underlying lawsuit (*Misik v. D'Arco*, 197 Cal.App.4th 1065, 1074 (2011), it does have to be proven in connection with the CCP §187 Motion.

Alter ego is an extreme remedy, sparingly used. *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995) The Motion to add the LLC's as judgment debtors should be denied.

**IV.    Outside Reverse Veil Piercing**

Outside reverse piercing seeks to protect the judgment creditor from the shareholder's fraudulent transfer of assets to a corporation. *Postal Instant Press, Inc. v. Kaswa Corp.*, 162 Cal. App. 4th 1510, 1522-1523 (2008) ("*PIP*") rejected the remedy, finding conversion and fraudulent conveyance already afford judgment creditors protection in that situation." And reverse piercing could harm "innocent shareholders and corporate creditors." (Id. at p. 1513; see also id. at pp. 1523-1524.)

Plaintiff relies on *Curci Investments, LLC v. Baldwin*, 14 Cal.App.5th 214, (2017) ("*Curci*") where a different panel of the same court in *PIP* held that reverse piercing was at least potentially available on the facts of the case before it. (Id. at p. 224.) *Curci* distinguished *PIP*, essentially on two grounds. First, it noted that *PIP* involved a corporation, whereas *Curci* involved a limited liability corporation (LLC). (Id. at p. 222.) A creditor can execute on a debtor's stock in a corporation but can only obtain a charging order against a debtor's interest in an LLC; the latter leaves the debtor in

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor

control of the LLC and able to prevent it from making any distributions. (Id. at p. 223.) Second, there were no "innocent" shareholders in the LLC. The judgment debtor owned 99 percent of the LLC; his wife owned the other one percent, but her share was community property, and therefore it could be used to satisfy the judgment against him. (Id. at pp. 222-223.)

But critical to the *Curci* decision was the fact the LLC in question had no business purpose except to serve as a vehicle for holding and investing [the individual defendant's] money. And unlike the facts in *Curci*, the LLC's in question (with one exception) operate businesses in separate locations with different employees. (Shah Decl., ¶10) In contrast to the facts in *Curci*, Plaintiff offers only conclusory allegations in support of this extraordinary remedy. There is no evidence offered about the businesses, employees, operations, financial status, corporate formalities, or ownership of any of the LLC's that Plaintiff seeks to attack to collect the Judgment. Instead, Plaintiff offers erroneous allegations of fraudulent transfers, many of which aren't even transfers. And as discussed above, the "transfers" Plaintiff complains of were done for tax and estate planning purposes, where neither Mr. nor Mrs. Shah was the transferor.

Plaintiff should be required to bring a separate lawsuit to obtain this extraordinary remedy, and the Defendants object to the jurisdiction and power of this Court to order enforcement of the Judgment against the LLC's on this basis. Moreover, the Motion is not well taken, and the Plaintiff's evidence is insufficient.

## V. Difficulty in Collection Does Not Justify Finding Alter-Ego

Plaintiff's Motion is all about difficulty in collecting the Judgment. But the alter ego doctrine does not guard every unsatisfied creditor of a corporation. It affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard. *Associated Vendors, Inc. v. Oakland Meat Co*., 210 Cal. App. 2d 825, 842 (1962), cited in *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).

## VI. Conclusion

Plaintiff's Motion seeks extraordinary remedies without offering sufficient evidence and without providing the Defendants an opportunity to assert a substantial defense. None of the grounds

Page - 5

Case: 11-05236    Doc# 243    Filed: 07/17/20    Entered: 07/17/20 08:52:31    Page 5 of 26

for the Motion are properly asserted in the context of a contested matter, and the Defendants are severely prejudiced by their lack of time to prepare and file opposition. The Motion should therefore be denied.

Dated: July 17, 2020          _/s/ Wayne A. Silver_
                              Wayne A. Silver, attorney for
                              Defendants

Opposition to Plaintiff's Motion to Amend Judgment to Add Alter-Egos and Spouse of Judgment Debtor

# EXHIBIT ONE

# [January 31, 2012 Order]

Entered on Docket
January 31, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes
the order of the court. Signed January 31, 2012

Stephen L. Johnson
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

<div style="float:left">UNITED STATES BANKRUPTCY COURT<br>For the Northern District of California</div>

| | |
|---|---|
| In re: | |
| San Jose Airport Hotel, LLC, | Case No. 09-51045 - SLJ |
| Debtor. | Chapter 7 |
| | |
| Mohamed Poonja, Chapter 7 Trustee, | Adversary Case No. 11-05236- SLJ |
| Plaintiff, | Date: January 30, 2012 |
| vs. | Time: 1:30 p.m. |
| | Place: United States Bankruptcy Court |
| Sevak & Sons, L.P., Chandrakant Shah, | 280 S. First St., Room 3099 |
| and Mrudula C. Shah, | San Jose, CA 95113 |
| | Judge: Honorable Stephen L. Johnson |
| Defendants. | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

Defendants' Motion to Dismiss ("Motion") came on for hearing at the above-referenced date and time. Appearances were noted on the record. For the reasons stated on the record,

IT IS HEREBY ORDERED as follows:

1. The Motion is denied as to Plaintiff's Breach of Contract claim;

2. The Motion is granted as to the claim of Intentional Interference With Contractual Relationship against Chandrakant Shah with leave to amend on whether Shah is being sued in his individual capacity or as CEO of Sevak & Sons and to specify the amount of damages;

UNITED STATES BANKRUPTCY COURT
For the Northern District of California

3. The Motion is denied as to the claim of Deceit, Intentional Misrepresentation, and Concealment;

4. The Motion is denied as to the claim of Negligent Misrepresentation;

5. The Motion is granted as to Mrudula Shah as a defendant in the complaint with leave to amend on whether Mrudula Shah is liable as a general partner of co-defendant Sevak & Sons; and

6. An amended complaint shall be filed no later than February 21, 2012.

\*\*\* END OF ORDER \*\*\*

# EXHIBIT TWO

# [First Amended Complaint]

1  James A. Hennefer (SBN 059490)
   HENNEFER, FINLEY & WOOD, LLP
2  425 California Street, 19th Floor
   San Francisco, CA 94104-2296
3  Telephone: (415) 421-6100
   Facsimile: (415) 421-1815
4  jhennefer@hennefer-wood.com

5  Special Counsel for Mohamed Poonja,
   Chapter 7 Trustee for San Jose Airport
6  Hotel, LLC, dba Holiday Inn San Jose, and
   Mobedshahi Hotel Group

7

8

9              IN THE UNITED STATES BANKRUPTCY COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13                                          Chapter 7

14 In re:                                   Case No. 09-51045-SLJ
   SAN JOSE AIRPORT HOTEL, LLC, dba
15 HOLIDAY INN SAN JOSE,                    (Jointly Administered with
   MOBEDSHAHI HOTEL GROUP,                  Case No. 09-51073-SLJ )
16

17
                                            Adv. Pro. No. 11-05236
18                            Debtors.

19
   MOHAMED POONJA, Chapter 7 Trustee for
20 SAN JOSE AIRPORT HOTEL, LLC, dba         **FIRST AMENDED COMPLAINT**
   HOLIDAY INN SAN JOSE, Debtor, and
21 MOBEDSHAHI HOTEL GROUP, Debtor,

22               Plaintiffs,
   vs.
23
   SEVAK & SONS, L.P., a California limited
24 partnership; and CHANDRAKANT SHAH,
   an individual.
25
                 Defendants.
26

27

28        Plaintiff Mohamed Poonja, chapter 7 trustee (the "Trustee" or the "Plaintiff") for San Jose

---

First Amended Complaint                           *In re San Jose Airport Hotel*, No. 09-51045-SLJ

-1-

1  James A. Hennefer (SBN 059490)
   HENNEFER, FINLEY & WOOD, LLP
2  425 California Street, 19th Floor
   San Francisco, CA 94104-2296
3  Telephone: (415) 421-6100
   Facsimile: (415) 421-1815
4  jhennefer@hennefer-wood.com

5  Special Counsel for Mohamed Poonja,
   Chapter 7 Trustee for San Jose Airport
6  Hotel, LLC, dba Holiday Inn San Jose, and
   Mobedshahi Hotel Group

7

8

9              IN THE UNITED STATES BANKRUPTCY COURT

10           FOR THE NORTHERN DISTRICT OF CALIFORNIA

11                      SAN JOSE DIVISION

12

13                                          Chapter 7

14 In re:                                   Case No. 09-51045-SLJ
   SAN JOSE AIRPORT HOTEL, LLC, dba
15 HOLIDAY INN SAN JOSE,                    (Jointly Administered with
   MOBEDSHAHI HOTEL GROUP,                  Case No. 09-51073-SLJ )
16

17
                                            Adv. Pro. No. 11-05236
18                            Debtors.

19
   MOHAMED POONJA, Chapter 7 Trustee for
20 SAN JOSE AIRPORT HOTEL, LLC, dba         **FIRST AMENDED COMPLAINT**
   HOLIDAY INN SAN JOSE, Debtor, and
21 MOBEDSHAHI HOTEL GROUP, Debtor,

22               Plaintiffs,
   vs.
23
   SEVAK & SONS, L.P., a California limited
24 partnership; and CHANDRAKANT SHAH,
   an individual.
25
                 Defendants.
26

27

28        Plaintiff Mohamed Poonja, chapter 7 trustee (the "Trustee" or the "Plaintiff") for San Jose

Airport Hotel, LLC, doing business as Holiday Inn San Jose ("SJAH") and chapter 7 trustee for Mobedshahi Hotel Group ("MHG")(jointly "Debtors"), by and through his undersigned counsel, brings this action against defendants, and alleges as against each of the defendants herein as follows:

## JURISDICTION AND VENUE

1. This adversary proceeding arises out of and is related to Debtors' bankruptcy cases.

2. This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This action is commenced pursuant to Bankruptcy Code Sections 541 through 550 and in accordance with Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure.

3. This adversary proceeding is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2), such that this court has jurisdiction to hear and to determine this proceeding and to enter an appropriate order or orders and judgment or judgments.

4. Venue in this court is proper pursuant to 28 U.S.C. § 1409, as the Debtors' bankruptcy cases were brought and are pending in this judicial district.

## GENERAL FACTUAL ALLEGATIONS

A. **The Parties and Bankruptcy Proceedings**

   1. **Debtors and Plaintiff**

5. On February 18, 2009 ( " SJAH Petition Date"), SJAH filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the above-entitled Bankruptcy Court, commencing the chapter 11 case of *In re San Jose Airport Hotel, LLC, dba San Jose Airport Hotel, Debtor*, case no. 09-51045-RLE (the "SJAH Chapter 11 Case"). The SJAH Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code on May 7, 2010.

6. On February 19, 2009 ("MHG Petition Date'), MHG filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the above-entitled Bankruptcy Court, commencing the chapter 11 case of *In re Mobedshahi Hotel Group*, case no. 09-51073-SLJ (MHG Chapter 11 Case'). The MHG Chapter 11 Case was converted to a case under chapter 7 of the Bankruptcy Code on May 13, 2010.

7.    The Trustee was appointed trustee of the SJAH estate by the acting United States Trustee on May 12, 2010, and was certified and qualified as the same.

8.    The Trustee was appointed trustee of the MHG estate by the acting United States Trustee on May 18, 2010, and was certified and qualified as the same.

9.    SJAH is and at all times relevant was a California limited liability company. Manouchehr Mobedshahi ("Mr. Mobedshahi"), an individual, and San Jose Airport Hotel Investment Corporation ("SJAHIC"), of which Mr. Mobedshahi serves as president, are and at all times relevant were SJAH's sole members.  SJAHIC, which is and at all times relevant was wholly owned by Mr. Mobedshahi, is and at all times relevant was the managing member of SJAH.

10.    MHG is and at all times relevant was a California corporation. Mr. Mobedshahi is and at all times relevant was the sole owner of MGH.  Mr. Mobedshahi is and at all times relevant was the chief executive officer of MHG.

11.    SJAH owned and operated a hotel known as the Holiday Inn San Jose ("Hotel").  The Hotel was a 512-room hotel operated under the "flag" or franchise of Holiday Inn and was located near the San Jose International Airport, at 1749 North First Street, San Jose, California, 95112.  SJAH owned the real property and improvements on which the Hotel was located.

12.    MHG was the entity which managed the Hotel for SJAH under contract with the SJAH.

**2.    Defendants**

13.    Defendant SEVAK & SONS, L.P. ("Sevak"), is a California limited partnership with its principal place of business in Santa Clara County.  On information and belief, Sevak is owned in its entirety by defendants Chandrakant Shah and Mrudula Shah, in their respective individual capacities.

14.    Defendant CHANDRAKANT SHAH ("Mr. Shah" or "Shah") is an individual who resides in Santa Clara County, California.  Mr. Shah is an owner of Sevak with his wife and as an owner and general managing partner of Sevak has complete control of Sevak.

**B.    Background**

15.    As of the SJAH Petition Date, SJAH's primary asset was the Hotel. SJAH owned the Hotel, including the real property upon which the Hotel is located and the improvements.  MHG operated the Hotel under contract with SJAH.

Case 11-05286    Doc# 243    Filed: 02/27/20    Entered: 02/27/20 08:52:35    Page 13 of
26

16. The Hotel, including all of its real and personal property assets and all rents generated by the operation of the Hotel, was encumbered by a first priority lien in favor of General Electric Capital Corporation ("GECC"), which lien secured a loan in the original principal amount of $32,000,000 (the "Hotel Loan"). As of the SJAH Petition Date, the balance of the Hotel Loan, as asserted by GECC, was approximately $25.7 million.

17. SJAH's primary business consisted of the ownership of the Hotel and the operation of the Hotel.

**C.    Purchase and Sale Agreement**

18. During the pendency of its chapter 11 case, SJAH, as seller, and Sevak, as buyer, entered into the *Purchase And Sale Agreement (Shah)* dated September 4, 2009 (the "PSA"), as modified by the *Amendment To Purchase And Sale Agreement (Shah)* dated October 9, 2009 (the "First Amendment"), and by the *Second Amendment To Purchase And Sale Agreement (Shah)* dated November 10, 2009 (the "Second Amendment") (the PSA, the First Amendment and the Second Amendment, are referred to collectively as, the "Sale Agreement"). True and correct copies of the PSA, the First Amendment, and the Second Amendment are attached hereto as **Exhibit A, Exhibit B,** and **Exhibit C** and incorporated herein. Shah represented on his behalf and on behalf of Sevak that they were fully capable of satisfying and would satisfy all terms and conditions of the Sale Agreement and represented and warranted the truth and accuracy of certain recitals.

19. By the terms of the Sale Agreement, Sevak agreed to purchase the Hotel from the SJAH for a purchase price of $46,200,000.00 (the "Purchase Price"),[1] and under other various terms and conditions contained in the Sale Agreement (the "Proposed Sale").

20. The Purchase Price, as modified by the Second Amendment, was to be comprised of $2,000,000.00 in cash at closing of the sale, and a secured promissory note in the amount of $44,200,000.00 (the "Note"), together with a personal guarantee executed by Shah in his individual capacity, up to an amount of $20,000,000.00 (the "Guaranty"). The Sale Agreement also included commitments to expend no less than $2,000,000.00 in cash improvements in the Hotel within one

---

[1] The purchase price could be reduced to $40,200,000 under certain circumstances.

Case 11-05286   Doc# 243   Filed: 02/27/20   Entered: 02/27/20 08:52:30523   Page 14 of
26

1  (1) year of closing, and to "actively and fully assist" in obtaining Bankruptcy Court Approval of the

2  Sale Agreement, including providing "complete financial, experiential and strategic information and

3  testimony" to support assurance of future performance of the Sale Agreement and adequacy of

4  protection of the interests of GECC.  Shah represented and warranted, on his behalf and on behalf of

5  Sevak, that they were fully capable of satisfying and would satisfy all terms and conditions of the

6  Second Amendment, Note and Guaranty.

7        21.    The parties agreed that Old Republic Title Company ("Old Republic"), located at 1900

8  The Alameda, San Jose, California, would serve as the escrow agent for the Proposed Sale, and

9  Escrow Number 0616004441-SR was assigned to the transaction at Old Republic and an escrow was

10 opened with Old Republic (the "Escrow").

11        22.    As recited in the PSA, Sevak deposited the Initial Deposit of $250,000.00 into the

12 Escrow.

13        23.    SJAH's obligation to close the Proposed Sale transaction was subject to Bankruptcy

14 Court Approval under the PSA, Section 4.2.5.

15        24.    Under Section 6.2.4 of the PSA (the "Adequate Assurance Clause"), Sevak

16 was contractually obligated to assist SJAH in obtaining Bankruptcy Court Approval of the Proposed

17 Sale.  Specifically, the Adequate Assurance Clause required the following:

18            6.2.4.  Buyer [Sevak] shall actively and fully assist Seller
                     [SJAH] in obtaining Bankruptcy Court Approval, as
19                   requested by Seller, including without limitation by
                     providing complete financial, experiential and strategic
20                   information and testimony that will support adequate
                     assurance of future performance under the Holiday Inn
21                   Agreement, the qualifications of Buyer and Mr. Shah as
                     an operator and owner of the Holiday Inn Property and as
22                   a franchisee from IHG (by assignment), and the adequacy
                     of protection of the interests of GECC.
23
24 Mr. Shah represented and warranted  on his behalf and on behalf of Sevak that they were fully capable

25 of satisfying and that they would satisfy the Adequate Assurance Clause.

   **D.    Sale Motion**
26
        25.    On October 14, 2009, SJAH filed its motion to approve the sale of the Hotel to Sevak
27
   (the "Sale Motion").  GECC opposed the Sale Motion on various grounds, including, among others,
28
   that the Proposed Sale did not adequately protect GECC's interests under Section 363(e) of the

---

1 Bankruptcy Code.

2     26.   In support of the Sale Motion, on October 12, 2009, Mr. Shah provided a declaration,

3 signed under penalty of perjury, attesting to his personal net worth of approximately $24 million,

4 which was comprised of equity in real property interests he controlled, stocks, cash, and other assets.

5     27.   On December 16, 2009, shortly before the initial hearing (the "Hearing") of the Sale

6 Motion, Sevak's principal, Mr. Shah, delivered to Mr. Mobedshahi, SJAH's principal, a cashier's

7 check in the amount of $250,000.00, representing the Second Deposit, as required under Section 2.3 of

8 the PSA.

9     28.   During the course of the Hearing, the Bankruptcy Court stated that it would conduct a

10 further evidentiary hearing for the purpose of SJAH demonstrating adequate protection of GECC's

11 interests as a secured creditor, under Sections 363(e) and 363(f)(3) of the Bankruptcy Code. The

12 Bankruptcy Court stated at the Hearing (and at a subsequent telephonic hearing on December 18,

13 2009) that at the evidentiary hearing, SJAH must provide evidence establishing that the value of

14 the Buyer Note, together with the value of Shah's personal assets accessible through the proposed

15 Guarantee, were in excess of GECC's stated secured claim of approximately $27 million. The Court

16 noted that such an analysis was necessary in order to ensure that the current value of the Purchase

17 Price, as comprised of the cash at Closing, the Buyer Note and the Guarantee, was sufficient to allow

18 the Hotel to be sold free and clear of GECC's secured claim under Sections 363(e) and 363(f)(3), as

19 required by the Sale Agreement.

20     29.   Following the Hearing, in order to prepare for the evidentiary hearing that would be

21 required by the Bankruptcy Court, and to make the requisite showing of adequate protection of

22 GECC's interests, SJAH requested that, pursuant to the Adequate Assurance Clause, Sevak and Mr.

23 Shah assist SJAH by: (a) providing reliable, independently verified information as to the value of

24 Shah's assets, based on current accredited appraisals, and the extent of his liabilities, in order to

25 support the Guarantee; (b) showing resources sufficient to satisfy the Sale Agreement; (c) providing

26 credible projections of financial results of the Hotel; and (d) identifying the sources of funding for

27 operating losses and capital improvements required, that would demonstrate Sevak's ability to perform

28 the Sale Agreement, Note and Guarantee in the face of operating losses.

Case: 11-05286    Doc# 243    Filed: 02/27/20    Entered: 02/27/20 08:12:30    Page 66 of
26

30.     Despite its contractual obligation to cooperate and assist SJAH under the Adequate Assurance Clause, Sevak, through its principal, Mr. Shah, refused SJAH's requests.  Instead, Shah argued forcefully that there was no point in doing so in any event because he could not satisfy the standard required to show adequate protection.

31.     In particular, Mr. Shah stated that the financial statement that he had provided to SJAH as recently as September 2009, showing a net worth of $20 million, was false; that his net worth was in fact substantially less than represented, given the negative equity in the real property assets comprising the bulk of his net worth, and his inability to refinance after 18 lenders had turned him down. Lastly, Shah stated that aside from his properties with little or no equity, he had no sources of cash or property with which to support his obligations under the Sale Agreement, despite earlier assurances from him and his son, Jay Shah, that such other sources were available to him.

32.     Based on Shah's foregoing statements on behalf of Sevak, as well as additional statements made earlier to SJAH, Sevak repudiated the Sale Agreement, both expressly and impliedly.  SJAH advised Sevak and Shah that it would treat that repudiation as an anticipatory breach of the Sale Agreement, but rather than immediately terminate the Sale Agreement, SJAH requested, pursuant to Sec. 251 of the Restatement (Second) of Contracts, that Sevak provide additional assurances of its ability to perform its obligations under the Sale Agreement.  As one means of doing so, SJAH proposed a *Third Amendment To Purchase And Sale Agreement* (the "Proposed Third Amendment"), which was circulated to Sevak on December 18, 2009.  A copy of the Proposed Third Amendment is attached hereto as **Exhibit D.**

33.     Alternatively, SJAH offered to consider any modifications to the Proposed Third Amendment that Sevak might believe adequate, and SJAH also offered to consider other, reasonable evidence of Sevak's ability to perform and to show adequate protection of GECC's interests.

34.      However, Sevak did not respond positively to any of SJAH's requests or proposals for additional assurance of performance, nor did it retract or refute Shah's clear statements of inability to perform.  Instead, Sevak simply denied any breach, anticipatory or otherwise, and refused to provide any further evidence, representations or evidence to SJAH.

Case: 11-05286   Doc# 243   Filed: 02/27/20   Entered: 02/27/20 08:02:30   Page 17 of
26

35. Thereafter, on December 21, 2009, SJAH formally declared Sevak in breach of the Sale Agreement, and terminated the Sale Agreement accordingly. Attached hereto as **Exhibit E** is a copy of the December 21, 2009 letter from SJAH's counsel to Sevak's counsel formally declaring Sevak in breach of the Sale Agreement.

36. Following the termination of the Sale Agreement, SJAH was left with no alternative but to withdraw the Sale Motion, and to agree to GECC's relief from the automatic stay to proceed with foreclosing on the Hotel.

37. The Initial Deposit remains in the Escrow at Old Republic, pending disposition of this adversary proceeding, or other mutually agreed upon instructions from SJAH and Sevak.

38. SJAH has requested that Sevak consent to depositing the Second Deposit into the Escrow pending disposition of this adversary proceeding. Sevak has failed to respond to the request, and the Second Deposit remains in the custody of SJAH's counsel.

**E.    Liquidated Damages Clause**

39. By the terms of the Sale Agreement, SJAH and Sevak agreed that it would be impracticable or extremely difficult to fix with exactness the actual damages that might be suffered by SJAH in the event of a breach of contract by Sevak. To that end, the parties agreed that in the event of a breach by Sevak, the Escrow Holder would be authorized to release the Nonrefundable Deposit (comprised of the Initial Deposit and the Second Deposit) to SJAH, and SJAH would be entitled to ownership and delivery of the Nonrefundable Deposit. Specifically, Section 8.2 of the Sale Agreement (the "Liquidated Damages Clause") provides:

> 8.2    **BUYER'S DEFAULT.** IN THE EVENT BUYER SHALL REFUSE TO CONSUMMATE THE PURCHASE TRANSACTION CONTEMPLATED HEREBY NOTWITHSTANDING THAT ALL CONDITIONS PRECEDENT TO ITS OBLIGATION TO DO SO SET FORTH IN THIS AGREEMENT HAVE BEEN FULLY SATISFIED, OR IN THE EVENT THAT BUYER SHALL OTHERWISE MATERIALLY DEFAULT HIS OBLIGATIONS UNDER THIS AGREEMENT, THE ESCROW HOLDER SHALL IMMEDIATELY RELEASE FROM ESCROW AND DELIVER TO SELLER THE NONREFUNDABLE DEPOSIT. THE RIGHT TO OWNERSHIP AND DELIVERY OF SUCH NONREFUNDABLE DEPOSIT SHALL BE SELLER'S SOLE AND EXCLUSIVE REMEDY FOR SUCH BREACH BY BUYER. BUYER AND SELLER EACH ACKNOWLEDGE AND AGREE THAT IN THE EVENT THE BUYER SHALL WRONGFULLY REFUSE TO CONSUMMATE THE PURCHASE TRANSACTION CONTEMPLATED HEREBY, OR SHALL OTHERWISE BREACH HIS OBLIGATIONS HEREUNDER, IT WOULD BE EXTREMELY DIFFICULT OR IMPRACTICAL TO DETERMINE THE ACTUAL DAMAGES TO SELLER. BY PLACING THEIR INITIALS BELOW, THE PARTIES

ACKNOWLEDGE THE NONREFUNDABLE DEPOSIT AMOUNT DETERMINED HEREUNDER HAS BEEN AGREED UPON, AFTER NEGOTIATION, AS THE PARTIES' REASONABLE ESTIMATE OF SELLER'S DAMAGES AND AS SELLER'S EXCLUSIVE REMEDY AGAINST BUYER, AT LAW OR IN EQUITY, IN THE EVENT OF SUCH A BREACH BY BUYER.

40. The Liquidated Damages Clause was agreed to, and accepted by, Shah on behalf of Sevak.

### FIRST CLAIM FOR RELIEF
**(Breach of Contract – Against Sevak)**

41.     Plaintiff hereby incorporates and realleges in this First Claim for Relief, each and every allegation set forth in paragraphs 1 through 40, inclusive, of this First Amended Complaint to the extent that they are consistent with this First Claim for Relief, as if each of those allegations were restated and set forth in this First Claim for Relief.

42.     The Sale Agreement is a written contract made between SJAH, as seller, and Sevak, as buyer.

43.     SJAH has at all times performed the terms of the Sale Agreement, or has otherwise been excused from performance due to Sevak's failure to perform.

44.     Sevak has failed and refused to tender its performance as required by the Sale Agreement, in that it unjustifiably failed and refused to cooperate and assist SJAH, as required by the Adequate Assurance Clause, in obtaining and providing evidence to make the requisite showing of adequate protection of GECC's interests as required by the Bankruptcy Court.

45.     By the terms of the Sale Agreement between SJAH and Sevak, it was agreed that it would be impracticable or extremely difficult to fix with exactness the actual damages that might be suffered by SJAH in the event of a breach of the Sale Agreement by Sevak.

46.     SJAH and Sevak agreed that in the event of a contractual breach by Sevak, Sevak would pay the Nonrefundable Deposit to SJAH as liquidated damages. This sum is in accordance with Section 1676 of the California Civil Code.  SJAH and Sevak estimated, computed, and agreed that this sum would be a reasonable amount to compensate for a probable actual loss suffered by the Debtor, and that this amount does not represent a penalty.

47.     By reason of Sevak's breach, Plaintiff is entitled to recover the Nonrefundable

1    Deposit as liquidated damages under the terms of the Sale Agreement.

2        **Wherefore**, SJAH prays for relief against defendant Sevak as set forth below.

3

4                            **SECOND CLAIM FOR RELIEF**
                          **(Breach of Limited Guaranty –**
5                              **Against Shah)**

6        48.    Plaintiff hereby incorporates and realleges in this Second Claim for Relief, each

7    and every allegation set forth in paragraphs 1 through 47, inclusive, of this First Amended Complaint

8    to the extent that they are consistent with this Second Claim for Relief, as if each of those allegations

9    were restated and set forth in this Second Claim for Relief.

10       49.    Mr Shah executed, in connection with the Sale Agreement, a personal guarantee for

11   $20,000,000 ("Limited Guaranty"), including Mr. Shah's promise, as Guarantor, that:

12       "GUARANTOR [Mr. Shah] HEREBY IRREVOCABLY AND UNCONDITIONALLY
         GUARANTEES AND PROMISES  TO Seller [SJAH] the payment and prompt
13       performance of each and every covenant, warranty, representation, provision,
         obligation, term and condition made or to be kept or performed by the Buyer [Sevak] . .
14       . by the Obligor [Sevak] . . . by the Trustors [Mr. Shah, Mrs. Shah and Shah
         Enterprises] . . . or by the Debtor . . . and contained in any of the Sale Documents, and
15       all liabilities, direct or contingent, joint, several or independent arising in connection
         with any of the Sale Documents including all liabilities of any assignee or successor in
16       interest of Buyer, Obligor, Trustors, or Debtor, as performance becomes due , whether
         as installments, or whether at maturity, or earlier by reason of acceleration or otherwise,
17       or whether otherwise, or whether extended, together with interest, attorneys' fees, and
         all other costs and expenses with Obligors are obligated to pay under the terms and
18       provisions of any of the Sale Documents.

19       50.    This Limited Guaranty is attached as a part of Exhibit A hereto and made a part hereof

20   as if fully set forth.

21       51.    SJAH performed on its part every covenant and condition in connection with the Sale

22   Agreement and Limited Guaranty to be performed, except as excused by the actions of Sevak and Mr.

23   Shah.

24       52.    Mr. Shaw "irrevocably and unconditionally guaranteed and promised the payment and

25   prompt performance of each and every covenant, warranty, representation, provision, obligation, term

26   and condition made or to be kept or performed" by Sevak.

27       53.    Mr. Shah has refused and failed to perform his obligations under the Sale Agreement

28   and Limited Guaranty, although SJAH has demanded such performance.

---

First Amended Complaint                                *In re San Jose Airport Hotel*, No. 09-51045-SLJ

-10-

1    **Wherefore**, SJAH prays for relief against defendant Shah under the Limited Guaranty as set

2  forth below.

3                  **THIRD CLAIM FOR RELIEF**
          **(Intentional Interference With Contractual Relationship –**

4                     **Against Shah)**

5      54.    Plaintiff hereby incorporates and realleges in this Third Claim for Relief, each

6  and every allegation set forth in paragraphs 1 through 53, inclusive, of this First Amended Complaint

7  to the extent that they are consistent with this Third Claim for Relief, as if each of those allegations

8  were restated and set forth in this Third Claim for Relief.

9      55.    The Sale Agreement was a valid, existing, written contract made between SJAH,

10  as seller, and Sevak, as buyer.

11      56.    Shah had knowledge of the Sale Agreement.

12      57.    Shah's unjustified refusal to provide for Sevak current appraisals of assets, an updated

13  and accurate personal financial statement to support the Guarantee, and credible financial projections

14  for operations of the Hotel, as requested by SJAH under the Adequate Assurance Clause of the Sale

15  Agreement, were acts designed to induce a breach or disruption of the contractual relationship between

16  SJAH and Sevak.

17      58.    Shah's intentional conduct in his capacity as an owner of Sevak and in his capacity as

18  the general partner and manager of Sevak resulted in Sevak's breach of the Sale Agreement.

19      59.    By reason of and as a result of Shah's intentional conduct and interference as set forth,

20  SJAH has suffered damages in the amount of the difference between the consideration that SJAH

21  would have received had Sevak performed the Sale Agreement and the amount that SJAH received

22  when Sevak breached the Sale Agreement, which difference exceeds $5,000,000.

23      60.    The conduct of Mr. Shah, including intentional misrepresentation, deceit and

24  concealment of material facts was done with the intention of thereby depriving SJAH of property or

25  legal rights or otherwise causing injury and hardship. It was despicable conduct that subjected SJAH to

26  cruel and unjust hardship, in conscious disregard of SJAH's rights, so as to justify an award of

27  exemplary and punitive damages.

28      **Wherefore**, SJAH prays for relief against defendant Mr. Shah as set forth below.

---

**FOURTH CLAIM FOR RELIEF**
**(Deceit, Intentional Misrepresentation, Concealment–**
**Against Shah)**

61.     Plaintiff hereby incorporates and realleges in this Fourth Claim for Relief, each and every allegation set forth in paragraphs 1 through 60, inclusive, of this First Amended Complaint to the extent that they are consistent with this Fourth Claim for Relief, as if each of those allegations were restated and set forth in this Fourth Claim for Relief.

62.     On or about September 4, 2009, verbally and in the signing of the PSA; on or about October 9, 2009, verbally and in the signing of the First Amendment; and on or about November 10, 2009, verbally and in the signing of the Second Amendment, Shah made the representations to SJAH and its representatives, Merle Meyers and Manouchehr Mobedshahi as alleged in paragraphs 18, 20, 24 and 26 above. These representations made by Shah were in fact false.

63.     The true facts were as set out in paragraphs 30 and 31, above, and that Shah could not (a) provide reliable information as to the value of Shah's assets and the extent of his liabilities in order to support the Guarantee; (b) show resources sufficient to satisfy material terms of the Sale Agreement; (c) provide credible projections of financial results of the Hotel; (d) identify sources of funding for operating losses and capital improvements required under the Sale Agreement; and otherwise demonstrate  Sevak's and Shah's ability to perform under the Sale Agreement.

64.     On or about September 4, 2009, verbally and in the signing of the PSA; on or about October 9, 2009, verbally and in the signing of the First Amendment; and on or about November 10, 2009, verbally and in the signing of the Second Amendment, Shah concealed from SJAH the true facts set out in paragraph 63, above.

65.     SJAH, at the time these representations were made by Shah, and at the time SJAH  took the actions herein alleged, was ignorant of the falsity of the representations set out in paragraph 62, above, and believed them to be true.  In reliance on these representations, SJAH was induced to and did sign Sale Agreement and proceed in the SJAH Chapter 11 proceedings to obtain affirmance of the Sale, expend monies on the operation of and improvements to the SJAH, and exclude other potential purchasers of the SJAH.

66. The aforesaid false statements and concealment were done with the intent to induce SJAH to enter into the Sale Agreement and unlawfully to deprive SJAH of its property and legal rights. SJAH was ignorant of the falsity of the statements and of the concealment at the time it entered into the PSA and amendments.

67. On or about the dates of the signing by Shah of the PSA, First Amendment and Second Amendment on September 4, 2009, October 9, 2009 and November 10, 1009, Shah made representations to SJAH seeking to have SJAH sign the PSA, the First Amendment and the Second Amendment, but failed to reveal the facts and suppressed the facts set out in paragraph 63 , above. The suppression of these facts, which were known to Shah, was likely to mislead SJAH and did in fact mislead SJAH in light of the other representations made by Shah concerning the Sale Agreement, First Amendment and Second Amendment.

68. The failures to disclose information and suppression of facts herein alleged to have been made by Shah were made with the intent to induce SJAH to act in the manner herein alleged, in reliance thereon.

69. SJAH, at the time these failures to disclose and suppression of facts occurred, and at the time SJAH took the actions herein alleged, was ignorant of the existence of the facts which Shah suppressed and ignorant of the existence of the facts which Shah suppressed and failed to disclose. SJAH was reasonable and justified in relying on the information supplied by Shah, and in reliance on the information supplied and facts not disclosed and suppressed by Shah. If SJAH  had been aware of the existence of the facts not disclosed and the facts suppressed by Shah, SJAH would not have, as it did, entered into Sale Agreement and amendments, would not have allowed Sevak to proceed with the Sale Agreement and tie up the Hotel and would not have continued to invest in the improvement and operation of the Hotel.

70. By reason of the foregoing, SJAH has been damaged in an amount in excess of $5,000,000.00.

71. The aforementioned conduct of Mr. Shah, his intentional misrepresentation, deceit and concealment of material facts known to him was done with the intention on the part of Shah to deprive SJAH of property or legal rights or otherwise causing injury and, hardship.  It was despicable conduct

1  that subjected SJAH to cruel and unjust hardship, in conscious disregard of SJAH's rights, so as to

2  justify an award of exemplary and punitive damages.

3  **Wherefore**, SJAH prays for relief against defendant Shah as set forth below.

4

5                                    **FIFTH CLAIM FOR RELIEF**
                                     **(Negligent Misrepresentation–**
6                                              **Against Shah)**

7      72.    Plaintiff hereby incorporates and realleges in this Fifth Claim for Relief, each

8  and every allegation set forth in paragraphs 1 through 71, inclusive, of this First Amended Complaint

9  to the extent that they are consistent with this Fifth Claim for Relief, as if each of those allegations

10  were restated and set forth in this Fifth Claim for Relief.

11     73.    When Mr. Shah made the representations set forth in paragraph 62, above, to SJAH, he

12  had no reasonable ground for believing them to be true.

13     74.    Mr. Shah made the representations set forth in paragraph 62, above, with the intention

14  of inducing SJAH to act in reliance on these representations in the manner herein alleged, or with the

15  expectation that SJAH would so act.

16     75**.**    SJAH, at the time the representations set forth in paragraph 62, above, were made to

17  SJAH and at the time SJAH took the actions or failed to act as herein alleged, was ignorant of the

18  falsity of the representations and of the existence of the facts which Shah failed to disclose.  If SJAH

19  had been aware of the truth regarding the representations made by Mr. Shah and of the facts which

20  were not disclosed, SJAH would not have, as it did, entered into  Sale Agreement and amendments,

21  allowed Sevak to proceed with the Sale Agreement and tie up the Hotel and would not have continued

22  to invest in the improvement and operation of the Hotel.

23     76.    SJAH was reasonable and justified in relying on these representations made by Mr.

24  Shah as set out in paragraph 62, above.

25     77.    SJAH, in reliance on these representations by Mr. Shah  was induced to and did sign

26  and carry out the Sale Agreement, Amendment and Second Amendment.  By reason the aforesaid,

27  SJAH has been damaged in an amount in excess of $5,000,000.00.

28     **Wherefore**, SJAH prays judgment against defendant Shah as set forth below.

---

# **PRAYER FOR RELIEF**

Based on the foregoing, Plaintiff prays for the following relief by way of this Complaint:

A.    On the First Claim For Relief, a judgment in favor of Plaintiff for liquidated damages in the amount of the Nonrefundable Deposit of $500,000.00, as provided for in the Sale Agreement between the parties.

B.    On the First Claim For Relief, a judgment or order authorizing the Plaintiff to deposit the Second Deposit into the Escrow.

C.    On the First Claim For Relief, an order directing Old Republic to release the Nonrefundable Deposit from the Escrow, to the Plaintiff.

D.    On the Second Claim For Relief, judgment in favor of Plaintiff and against Mr. Shah for damages according to proof up to the amount of $20,000,000 on the Limited Guaranty.

E.    On the Third Claim for Relief, judgment in favor of Plaintiff and against Mr. Shah for damages in the amount of the difference between the consideration that SJAH would have received had Sevak performed the Sale Agreement and the amount that SJAH received when Sevak breached the Sale Agreement, and for punitive damages.

F.    On the Fourth Claim for Relief, Judgment in favor of Plaintiff and against Mr. Shah for damages according to proof and for punitive damages.

G.    On the Fifth Claim for Relief, Judgment in favor of Plaintiff and against Mr. Shah for damages according to proof and for punitive damages

H.    On the First and Second Claims For Relief, judgment in favor of Plaintiff and against Sevak and Mr. Shah, and each of them, for all recoverable costs, including attorneys' fees, incurred by Plaintiff in this adversary proceeding.

/ / / / / /

/ / / / / /

/ / / / / /

/ / / / / /

/ / / / / /

---

1   I.     On the First, Second, Third, Fourth and Fifth Claims For Relief, such other and further

2   relief as the Court may determine to be just and equitable in the circumstances.

3

4   DATED: February 21, 2012

5                                              HENNEFER, FINLEY & WOOD, LLP

6

7                                              By:___/s/ James A. Hennefer_____
                                                      James A. Hennefer
8
                                               Special Counsel for Mohamed Poonja,
9                                              Chapter 7 Trustee for San Jose Airport
                                               Hotel, LLC, dba Holiday Inn San Jose, and
10                                             Mobedshahi Hotel Group

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

First Amended Complaint

First Amended Complaint                                        *In re San Jose Airport Hotel*, No. 09-51045-SLJ